May it please the Court, my name is Dan Sanders. I represent the appellant in this case, Smith & Loveless Company, which is a sewage and wastewater treatment equipment manufacturer located out of Lenexa, Kansas. In the time allotted, I would like to address with the Court three key points, three reasons why we, Smith & Loveless, believe the District Court erred in summarily dismissing our counterclaims seeking compensation on this construction project. First, the 2007 amendments to ORS Chapter 701 have the substantive effect of allowing even unlicensed contractors to maintain third-party claims as well as counterclaims. Second, my client, Smith & Loveless, timely obtained an Oregon Contractor's License. Second, by timely obtaining an Oregon Contractor's License, Smith & Loveless falls and fell within the safe harbor provisions of the 2007 Oregon Contractor's Licensing Statute 701.131. Third, and in the alternative, we submit, and we submitted this to Judge Gelderk, the magistrate in the District Court, if you're inclined to dismiss our counterclaims, they should be without prejudice subject to our right or ability to seek leave and refile the same. And those are the three points I want to cover here in the time allotted. Effective January 1, 2008, the former Contractor's Licensing Statute under Oregon law, which is 701.065, I think was last amended in 2005, was substantially amended by the Oregon legislature and renumbered as ORS.131. Where the former statute, the 2005 statute, .065, barred an unlicensed contractor from commencing a claim in state court, the new 2007 statute now only barred an unlicensed contractor from, quote, commencing a court action. So if we agree that the plain language of the 2007 amendment is limited to a court, to barring a court action, and if we agree with you, that doesn't, by its terms, include a counterclaim, which is what the Pintich court said. But opposing counsel cites a host of legislative history suggesting that the state legislature didn't intend the change in language to have that effect. In fact, the Pintich court says the same thing. This may not have been their intent. Why would we go with the plain language of the statute rather than with the legislative history and other indications cited by opposing counsel? I'm not familiar with what opposing counsel has written. I was aware of that at the district court at the time it was made. What they are referring to, is my understanding, were certain comments made by the Oregon Construction Contractors Board. The Oregon Construction Contractors Board did not sign, did not enact the legislation, did not enact the new 2007 statute. Certainly they had input on it, I'm sure. Is there any legislative history, actually, by legislators relating to the meaning of the change or the amendment? Not that I'm aware of. I think it's strictly, and I could be wrong, but if my memory serves me well, it strictly comes from the Oregon Construction Contractors Board, which is itself its own, apparently, arbitration tribunal. So under Oregon's canons of statutory interpretation, in Federal court, we would say if the plain language is clear, we stop there, we don't go further and look at legislative history. How does Oregon apply its canons of statutory construction? Although I'm a Kansas lawyer, I have looked at that issue. In fact, I looked at it again yesterday, and I think Oregon law is identical. Obviously, you will look at the text of the statute, the plain wording. You will look at the context in which it was drafted. And if useful, sometimes you may want to look at the legislative history. But as far as I can tell, the actual test, the text of the statute will always trump the context of the legislative history. And when I say the text, the plain meaning, and that takes us to the text of the statute. The new statute says court action. You are precluded from commencing a court action, and we submit that a counterclaim, especially a compulsory counterclaim that my client was forced to file within 20 days, pursuant to federal rules of civil procedure. We had no choice but to go ahead and file that or risk waiving our claims forever. Is there any – I didn't see in the statutory language any definition of action versus claim. The Penn State court cited some. But is there anything that you're aware of in Oregon case law indicating? Yes, I think it was the Abbott decision, and I think it's mentioned – I'm pretty sure it's mentioned in the brief. And if you give me a second, I'll tell you exactly what the Abbott court – and we just pulled some language from them. And that basically – I'm sorry. The Abbott decision says an action is a civil or criminal judicial proceeding. An action is a discrete judicial proceeding involving a demand for relief that must be independently commenced and adjudicated. And I know that's one of the cases we found in preparing our appellate brief. So we submit that as a completely fundamental different term than the word claim. And I know in common practice – and I'm just a basic civil litigator – when I think of action, I think – we've settled most cases, obviously. This one, unfortunately, was not. We dismiss an action. We don't dismiss claims when we settle a case. We dismiss action. So I think among the bar, the common meaning is there is a distinct difference between claim, especially counterclaims and an action, while the action is the more all-encompassing vehicle that we are trying our claims within. What do we do about the 2013, the new version of this statute, which now puts the word claim back in? How should we regard that? What effect does it have on our analysis? Well, it's very helpful to Smith & Lovelace's cause, and I was quite surprised when I learned about that from my local counsel at Stoll Reeves that they have enacted it because one of the arguments – and we certainly expected them to raise it – is Pinstitch – and we've got a problem with that – Pinstitch was just mere orbiter dicta. It's just simple dicta we should ignore. Yet it was meaningless. It was not needed. But even well-reasoned, well-analyzed dicta is authority to predict in this court how the state highest court in Oregon would rule. But what I found interesting about the 2013 amendment, I can tell you the Oregon Construction Contractors Board didn't find it or believe it to be dicta. The state legislature didn't think the Pinstitch decision was mere dicta. They went back and amended the whole statute and reverted it back to the old 2005 statute, which prohibited claims in state court. So I think it solidifies and buttresses our interpretation of the statute, that is our counterclaims filed by Smith & Lovelace, which were compulsory, are not barred by the 2007 statute and its prohibition against unlicensed contractors filing court actions. So opposing counsel suggests that the legislature's intent has been consistent throughout. There was some inadvertent word, unfortunate word choice, and as soon as a court brought their attention to it, they made a change so that we should interpret all three statutes consistently. So would Oregon courts support that sort of interpretation? I disagree, and the only thing we have to fall back on, Your Honor, is the Pinstitch decision. And they certainly did not. And I believe even in their language, they found it possibly to have been an inadvertent change. But even then, they felt compelled, we have to go by the plain meaning, we have to go by the text of the statute, and that overrides. And what about the fact that Pinstitch says, well, this change in 2007 makes one portion of the statute superfluous? Don't we normally interpret statutes so that no part is superfluous? That's what I saw that they did, and that was part of their analysis. And what they're referring to, I don't know, it's probably not clear in our brief, Your Honor. In the court below, we made the exact same argument on behalf of Smith & Loveless that Pinstitch did, that the subsection 2C, which allowed third-party claims where construction defect or defects in performance are raised, we made that same identical claim in the court below. In fact, that was our first point on summary judgment in opposition. I don't necessarily agree it's surplusage. I think the court found it could have been. But in my opinion, under the surplusage, it's a very simple line. All it says is that contractors, unlicensed contractors, precluded from maintaining or commencing, that is, commencing a court action. And all it said was, I think in that regard, is that that was a subsection A. They went on to say, therefore, subsection C, which is down the row, which had to do with third-party claims, was mere surplusage at that point. That was their opinion at the time. But really the analysis we're focused on is subsection A of the 2007 statute, which I don't think has any surplusage. One of the, I think a related subject on this topic, I just want to go real quick and reserve some of my time, is certification. There is certainly no need to certify this case to the Oregon Supreme Court. Number one, the PennStetch Oregon Appellate Court has spoken. They've explained this issue. And two, the Oregon legislature has gone back to amend the statute, meaning this is a limited, there's only going to be a very, very limited number of cases where this issue will ever arise again. It would have to be a contractor, an unlicensed contractor who was sued by an owner or a general who did work between 2008 and 2013 and didn't have a contractor's license. So in the future, this case will have, whatever this Court decides, will have no broad application in the future. This is going to be probably the only time this issue is ever heard, and we think that defeats certification. Are there any cases, to your knowledge, in the pipeline which raise the same problem in this case? None. I think it's just the only one there is. Because typically, and I do a lot of construction law, it's always the unpaid contractor who files suit first. And that law is always going to be the same. So whatever your opinion is here today will not affect that one iota. I want to reserve a little bit of time, but I do want to address the dismissal without prejudice, because that's always been close to me. I disagree that the case should have been dismissed to begin with, but I urge Judge DelGerks that there is nothing in the statute that commanded that it had to be a dismissal with prejudice. We cured any issues as to non-licensure by obtaining a license, and therefore we should have been a dismissal without prejudice. The only cases I could find in the whole country were out of Georgia and district court did the same thing there, and the appellate court in Georgia called it a draconian remedy. It would basically nullify our ability to be able to cure our lack of licensure when we have this compulsory counterclaim situation. And I'd like to reserve the rest of my time if I could. Thank you. All right. May it please the Court. April Rothrock, I'm here on behalf of two parties today, Stellar Jay, the Oregon general contractor, and Travelers, both of whom were sued by appellant to recover amounts allegedly owed under the subcontract agreement. The district court properly dismissed this case for one very simple reason. The Oregon legislature has barred, since 1971, claims where a contractor failed to obtain a contractor's license. Smith and Loveless failed to obtain a contractor's license. That's it. The dismissal was correct, and this Court should affirm. This Court's job is to determine what Oregon law is. The Oregon legislature has made a policy choice to implement this statutory scheme. It's to protect consumers and the industry. They have the licensure requirement, and without the bar, there would be no enforcement mechanism. And so that's, it may be harsh, but that is what the Oregon legislature has chosen. And it's not for this Court to consider whether that's a good or bad policy choice. But when I look at Oregon law and the clues that Oregon State has given me, I see the statute, which now says, the applicable one says, a court action, which under Oregon law doesn't seem to include counterclaims. And I have an appellate court which says, yes, we read court action to mean court action and to exclude counterclaims. So those are the two pieces of evidence I have about what the State thinks on this particular case. So why shouldn't I just rely on that? Well, first of all, pincetich, which is how that's pronounced, is dicta. Footnote 3 is dicta. It was not important to the holding in that case. They've conceded in their briefing. I guess I don't see why, whether it's dicta or not, I don't see why that matters, because it's, we're attempting to discern what the Oregon Supreme Court would do, and we have a statute which has plain language. And so all that, what did you say it was? Pincetich. Pincetich? All that pincetich says is a court in Oregon interprets the plain language as if it were the plain language. So you don't have any evidence on the other side. I mean, it's more of a concern, why shouldn't we give effect to the plain language of the statute? Well, one reason that the fact that it's dicta is important is because the issue was never briefed to the pincetich court. They went off on their own to make these comments in the footnote without any backup. And there are multiple flaws in the footnote itself that show that that's not what the Oregon Supreme Court would hold when looking at the statute. And I'll go through it. There's at least six flaws. And the first one is the fact that it's dicta. Well, rather than focus on the flaws in pincetich, tell me why the Oregon Supreme Court would interpret the 2007 statute contrary to the plain language, and what's the best evidence supporting that argument now? Well, preventing a party from commencing a court action, it's not necessarily – it's not required that the Court interpret that to say that a counterclaim doesn't count. If you look on this brief, there are two captions. And the second caption is Smith and Lovelace's action that they started by counterclaim. And they summoned – they issued a summons, a third-party summons to travelers and brought them in. And what you end up doing if you accept their – I'm sorry. Is there any Oregon court – so Opposing Counsel cited Abbott for the proposition that action has a specific definition which wouldn't apply to a counterclaim. Are there cases that you've cited or that you've found that, say, a counterclaim is the same as a court action? Well, no. In fact, I'm not familiar with Abbott, and I'll have to go check that. But we looked at general dictionary definitions, and that's what's in our brief that we submitted to you, saying that commencing a court action can be the same thing as commencing a claim, and that – and the district court had no trouble with this either, that it seems obvious that whichever party got to the courthouse first – in this case, it happened to be my client – that the claim and the ability to recover under the contract has to be asserted in some way. And so in this, when you're the second to the courthouse, they did it through counterclaim. But if you accept that interpretation, it leads to a perverse result, because in that case, you're rewarding and allowing a contractor to bring this type of claim. But there must be a reason why the Oregon legislature amended the statute, right? Well, there was a reason. To them, to them, those two words are not synonymous, as you seem to be arguing they are. Well, the language – the history that the Pincetich decision also acknowledges is that when these changes were brought to the legislature, they were not intended to make a substantive change. So the opposing counsel says you're quoting the language of the proponent, but not the language of the legislature. So is there any – are there any statements by the legislature, like a committee – like we look at Senate reports or House reports, as some of us don't. But those of us who do look at what the legislature said instead of the proponent of the amendments or lobbyists, is there anything by the state legislature? I'm not aware that there is. But the state legislature took the proponent at their word. The proponent came in and said, we want to make these changes. And it had to do with the mediation services that the CCB offered. They got in and messed around with the paragraph. But they said that we're not changing. We have no intent to change any other substantive part of this law. So this is the intent of the proponent. Yes. And it was presented to the legislature that way. And it's codified in Oregon at ORS 174.20 that the courts shall pursue the intention of the legislature if possible, and that legislative history may be offered. And you don't have to find ambiguity in the statute. The court is entitled to look at that because the cardinal rule, and this is how the Supreme Court of Oregon has put it, is to effectuate the intent of the legislature. And so here – So in the Federal court, we – the Supreme Court has told us that the intent of the legislature is discerned, first of all, by what they put into the statute. And I asked opposing counsel, is that true also in Oregon? And he cited some cases saying, yes, that you start with the plain text of the statute. Is that not correct? You're citing a statute saying, no, legislative history is equivalent? Or what – Under the Oregon rules of construction, the court can consider legislative history off the bat, along with the language, without finding ambiguity first. So it can be part of the mix. And you're citing what statute? I'm citing ORS 174.0201B. And also, the court should look at the Gaines decision, which is 346 Oregon 160. Does that authority say that if the language is plain, even then you can look at the legislative history? I think it's along the lines of, you know, context is important, and nothing is ever plain except in context, so the court can consider it all before reaching a decision about what the legislature intended. Additionally, there's an Oregon statute 174.010 that says that the court should give effect to all provisions. So did you cite State v. Gaines? Is that? Yes. Because I'm just looking at this quote here that says, if the legislature's intent is not obvious from the text and context of the statute, further inquiry is unnecessary, if but only if the legislature's intent is not obvious from the text and context, the court will then move to the second level, which is to consider legislative history, which is consistent with what the Federal court rules are. But it seems like the legislative history would be the second level of inquiry. Well, I think there are other cases that give the court the ability, including the statute that I cited, that legislative history may be offered and considered. But, you know, given that this bill was proposed to the legislature as not making a substantive change, and that court action does not necessarily mean that it has to be a plaintiff, the Oregon courts, I believe, and if you have a doubt about it, you can consider the history and look at the context. And there's one other rule I would like to get into regarding this, regarding Mastriano at 342 Oregon 684, that the court shouldn't — the legislature is presumed to be familiar with the decisions that came before, and that the court will continue to enforce decisional law that preceded changes to the statute unless the statute shows that it was intended to change prior decisional law. So here, prior to this amendment, Oregon case law, including the splinters case, have applied expressly the bar to counterclaims. But there the statute said claim. So that sort of begs the question, right? It's only if claim and action mean the same thing would we look at — Well, I think what Mastriano suggests is that there would be something in the legislative history that would show definitively that the court was trying to change the result of a prior case, or that it would be in the language of the statute. And I don't think the change-to-court action is definitive. Again, just looking at the language and the context of this dispute. So there's no reason that the Oregon legislature would reward a contractor who inspires other claims against it by another party, whereas a contractor who didn't cause — incite anyone else to sue them can't bring their claims. You'd be treating those two classes of contractors differently, and there's no reason for that. And so finally, on the interpretation issue, the Robinson case, for example, which is 20 Oregon App. 340, says this is a remedial statute. It should be read as a whole and liberally construed to accomplish its purpose. So there is no reason to treat those two types of contractors differently and to allow the bar to be eviscerated simply because my client in this case, Stellar J., got to the courthouse first, before Smith and Loveless. It doesn't make any sense to the scheme, and it would undermine it. And what this Court should do is protect the scheme and the Oregon bar that has been in effect for nearly 40 years. Let me ask you a couple of questions on different subjects now, moving away. First of all, do you agree with Mr. Sanders' evaluation that whatever we do is going to affect only a very small segment of cases, if any other cases at all? No. I mean, we — my partner does a lot of construction law, and there are other disputes out there about this. And you would have to do — You mean in this same time period? Yes. Yeah. So you think there are other cases that might be affected? Yeah, I think there would be, and they could be brought. I mean, you know, the statute was amended in 2012, I believe it was. So, you know, there are still cases out there that the statute of limitations hasn't run on that could be raised as well. You know, and let's look at that. I mean, you know, the Pinsettish footnote came out, and what's the first thing that happens? You know, the Oregon legislature says, well, if Pinsettish is true, if that analysis is correct, that's not what we want. So we'll go back to our original language. And I think that that is an indication of the overall approach that Oregon has taken to the area of law. As opposing counsels, as an acknowledgement that they changed the law in 2007, so now they're changing it back. But it's not. And if you look at our response to their supplemental authority, I have – there are cases in there that show that you can't judge what the 2007 legislature meant, and certainly not by – Kagan. So we shouldn't look at the 2013 legislature at all, or we – Well, I – Because it seems like it could. You could argue it either way, is the only point I'm making. I mean, you have to look at what the 2007 legislature intended. But I think the events of 2013 just reaffirm that the Oregon legislature overall has intended the bar, and that that is what this Court should enforce. All right. Now, let me ask you a question on yet a different subject. What's your response to the – the last argument Mr. Sanders makes, which is in his brief also that – which I'm still trying to understand, is that, well, if we uphold the dismissal of the counterclaims, it should be without prejudice. It doesn't make any sense. That is not the result that this Court should follow for two reasons. Well, whether – let me ask a preliminary question. Whether it makes any sense, do we – can we do that? If we thought it was a, you know, equitable thing to do? No, I don't believe so. I mean, the statute is a legal bar. We raised it as an affirmative defense on the merits. We brought our motion for partial summary judgment. You know, this isn't like they moved to voluntarily dismiss their claims, right? I mean, this is on the merits, and I don't think they haven't cited any authority. So the case before us is a case on the merits, and that's the only case we can decide? That's right. Is that right? Now, is this a – is this a compulsory counterclaim, you think? Yes, probably. And just going back to that, you know, if what they're suggesting were possible, wouldn't everyone do that? Wouldn't all the contractors just, okay, we'll dismiss this? Well, I don't know because I don't think all of them could, you know, get a license on a moment's notice like apparently Smith and Lovelace could. Well, I mean, you know, the safe harbor provision requires that they do it in 90 days, and usually you can, you know, the wheels of justice turn slowly in the district court. I think a lot of them could get it done before a merits ruling was entered. So, you know, to the extent that the Court is considering that the 2007 amendments may be pivotal to the outcome of this case, the Court should certify the issue to the Oregon Supreme Court, who is familiar with the statute and should have the first opportunity to decide and set the Oregon rule on that. So we would ask that you do certify it. And we also ask you to affirm for the multiple reasons that are in our brief. We didn't get into all of the issues. If there were any other ground that the Court were interested in, I have 50 seconds. No, your time is actually 50 in the red, so thank you. Yes, for affirmance, thank you. We have about two minutes left. Two minutes and 35 seconds, so I'll try to be brief. The question that's been raised by the panel today is, what is Oregon's statutory construction law? Is it text, is it context, or is it legislative history? I went back, my co-counsel here pulled some citations out of our brief, which is good Oregon law, and I would refer you if you go back and look at the briefs, the State v. Gaines case, and I'm just going to quote right out of what the case said. When the text of a statute is truly capable of only having one meaning, no weight can be given to legislative history that suggests or even confirms that legislators intended something different. Same case, State v. Gaines, the Edison, Oregon Supreme Court case. There the Supreme Court in Oregon cautioned, quote, there is no more persuasive evidence of the intent of the legislature than the text, because only the text is approved by the majority of the legislators. So what the Oregon Contractors Board Department back in 2007 said or didn't say is of no value here. We have to go off the text of the statute first, and that's decided if legislature essentially affirmed it in 2013. Second, oh, on the dismissal, I've never understood where they're coming from on the dismissal part. This is a standing issue, in my opinion. The lack of a contractor's license doesn't preclude us going to court. It can be waived. It's an affirmative defense, which apparently they raised. And if an owner doesn't raise it, then they waive that as a defense, meaning it's a standing issue. It shouldn't have been dismissed with prejudice. Once we were able to cure that licensure issue, we should be allowed to refile. Again, nothing in the statute says it has to be a dismissal with prejudice. We cured it, and we took care of it. And that was we took care of it before summary judgment came down even. Finally, I admit we didn't have a contractor's license. In my last 30 seconds, I'm going to say Smith & Loveless, I've worked for this company since 1991. They are an equipment supplier. What they do is, and we put it in the brief, is when they're asked where they bid a particular project, they'll on occasion hire a local licensed contractor. That's what they did here. It was a licensed Oregon contractor that did the job. The rules in the Mount Hood case says these statutes weren't designed to allow owners and general contractors to get free construction services, and that's what happened here. They made record profits on this job, and thank you very much. Thank you. The case of Steller J. v. Smith & Loveless is submitted.
judges: Alarcon, Tashima, Ikuta